Case number 16-1003. NextEra Desert Center Blythe LLC petitioner versus Federal Energy Regulatory Commission. Mr. Estes for the petitioner, Ms. Rylander for the respondent, and Mr. Weaver for the intervenors. Mr. Estes, good morning. May it please the Court, good morning. I'd like to reserve five minutes for rebuttal. The issue here, to state it as we put it in our reply brief, is whether there are one or two roads to what I call Rome on reply to getting congestion revenue rights. Is the only road, the one FERC staked out, claiming the agreement, the interconnection agreement, clearly and unambiguously limited NextEra only to the process set forth in the agreement? Or is there, in fact, another road, which the tariff provides? This is no, and there are three possible ways to come out on that. You could affirm FERC saying, well, the agreement unambiguously has that effect. That would mean affirmance. We say that the tariff and the agreement taken together unambiguously show there are two roads, in which case you vacate and remand for them to consider the is ambiguous, in which case you would remand FERC's brief foray into testing the waters of ambiguity, as I will explain shortly, doesn't work. And this is no trifling matter, because if we're right, FERC has engaged in a logical fallacy that dates back thousands of years to the Stoics, in which this Court at least three times has discussed denying the antecedent. And, Judge Tato, you'll remember in two decisions, NETCV FERC, which we were on. I'm having trouble getting my mind around FERC being thousands of years old. Go ahead. Well, you know, logic lives on for generations. Yes, I got you. Okay, but go ahead with your... So, Judge Henderson will remember her dissent, too, in the Florida bankers case. Here's how they are violating that logical condition. Classically, this is stated, if I behead the king, the king lives, but we know there are lots of ways the king can die other than beheading. That's what FERC is doing here, and that's what I plan to demonstrate to you today. They're saying, well, if you have what are called capital-in network, capital-U upgrades under the contract, you can get congestion revenue rights under the terms of that agreement. But if you don't have network upgrades, as that term is defined, you can't get them. That's the only road to Rome. Now, there are several fatal problems with that, and actually the briefs speak loudly to the first one. None of the parties to the interconnection agreement agree with FERC. Below and before this court, the interveners say, well, there are two roads. You could use the agreement, but you've given that up, or you could use the tariff, except you don't qualify because there are preconditions you don't meet. An We agree with the interveners to that extent. We disagree on whether we've met the tariff restriction, but FERC stands alone, announcing out of the blue in its first order, well, the contract disposes of everything. An issue, by the way, I think, that if Edison in particular, who vigorously opposed our complaint, had thought was right, they would have fired that bullet in their opposition to the complaint. They would have said, you're dead on arrival because of the agreement. But let's look at what FERC says about the agreement. You can think of about two basic dimensions of it. First, they seem to be looking at what's not in the agreement, and we say, well, one thing that's not anywhere in the agreement is any express statement that says Section 3611 doesn't apply. You can't use the tariff door. It's closed. We do know the agreement specifically says, these aren't network upgrades, so you can't, yes, you can't, for network upgrades, get congestion revenue rights. But that just highlights the absence of an express waiver of the tariff right. And what FERC really seems to be saying, at least some of the times, and if you look at... You don't take issue with the notion that under the agreement, there's no ability to get the CRRs. Your claim is that you can nonetheless get them under the tariff. That is absolutely right. So I guess my question is, just as a functional matter, what would be the purpose of the parties reaching an accord that says there's no CRRs available under the agreement, but there nonetheless is another way for you to get the very same thing? Because we have to look at what the background rules are, Your Honor. If you're silent on the status of the tariff, this was actually where I was going next. What does that mean? Mind you, by the way, when Edison filed the amended agreement that contained this language in 2013, they represented the FERC and everybody, actually. That there were no other beneficiaries other than Desert Center, which would mean there were no congestion revenue rights. So one reason for absence might be people didn't have this front of mind, but who wins if that's the case? Who wins because of silence? And I would submit to you it has to be NextEra, because the tariff right... By the way, this is not just some regular tariff right. This tariff right was mandated by a FERC rule. So I guess I'm asking a little bit of a different question, because I get your argument that if you mesh together all the terms of everything, it turns out, actually, we still have an entitlement to get CRRs under the tariff, directly under the tariff, rather than going through the agreement, which everybody agrees was relinquished. And you may or may not be right about that, you know, you get the benefit of this. I'm just asking, as a functional matter, why would somebody want that result? Why does that result make sense that you end up getting CRRs via the tariff, even if the nub of the agreement was that you can't get them under the agreement? Why does that result make sense? I see. Well, let's look at it this way. Nobody disputes the fact that these facilities at the federal level are not in the interim. And the agreement states, and the interveners argue forcefully, that these can't be network upgrades because they're temporary, and that's not something you would ever get refunds for. And mind you, the agreement talks about giving up refunds. It doesn't actually talk about giving up the alternative expressly. But you agree that it was given up under the agreement, so we're past that. That's right, except that CRRs are a different creature. And under the Commission's regulation, which the Commission ignores, they are specifically allowed for temporary facilities. 36.11.1 says you can have them for the predetermined life of the resource. And that makes a lot of sense, Your Honor, because if it turns out that you have system benefits that next era paid for, and this is in fact what's happened, that by rule should be next eras because of the grant of these rights, then you've got a vehicle that is a different one than what the tariff would give. But that's true under the agreement, too. This is what I don't understand about this, is that you may be right. You may or may not be right that because of the way this transpired, you still have an entitlement under the tariff as a legal matter. I'm just trying to understand as a matter of background, just common sense about the world. It's also true under the agreement that you could say that, look, some of the stuff we're doing, it might be seen as interim, but it actually turns out to benefit the system long-term, and therefore we ought to get our money back for it. And that's true. That could happen. And that could be a network upgrade. And you could have said, well, we want to get a CRR instead of getting reimbursed. That's all true under the agreement. But the parties dispense with that under the agreement with a mechanism for you to get reimbursed for things that benefit the system long-term. My question is, if the CRRs are gone under the agreement, why does it make sense to have them still be available under the tariff? Why would anybody design a system that brought about that result? Why does that make sense? I think, well, there are several answers. And forgive me, Your Honor, if I'm not quite pinning down your question, but let me try now. Sure, please. First of all, it may be that no one had, as I said, front-of-mind CRRs at all. Okay. The mechanism... I'm sorry, that no one what? Had in the front of their mind... Oh, that no one had it in mind when they drafted the agreement. It may be. We didn't have a hearing. We don't actually know. But we know that we had a representation that would not exist. We had a bargain for right in the instance of the interim facilities becoming permanent. And I would submit to you that this could make sense for several reasons. First of all, if NextEra wins in this litigation, it's lost a right it bargained for under the contract because you cannot have CRRs in refund. So it bargained for a possible remedy that it will leave unstruck, if you will. And the fact that we would accomplish the same thing... But it got something immediately. If you're right, if you win, it will still get its CRRs under the tariff. That's right. So it's not leaving anything behind. Well, we've said to begin with, at the outset, that we would have disabled ourselves from seeking to get permanent CRRs or refunds, get permanent refunds, excuse me, under the agreement if the interim facilities become permanent. And there would never be a double recovery. And what we have here is a statutory, a regulatory right that actually was commanded by statute. This is the highest order of regulatory commandment. Because the rule that resulted in 3611, Congress directed FERC to enact within 180 days of passage of the Energy Policy Act of 2005. So turning everything around, how could it be that silence somehow trumps a statutory command embodying the regulation? And how can it be that FERC says, this whole question is irrelevant and we don't even have to look at the nature of... I'll just try one more time. Sorry, I'll give it a rest after one more try, which is this. Suppose the parties actually had realized that this issue were on the horizon when they're negotiating the agreement and then the addendum. Suppose that they realized there's a question about CRRs. Why would the parties then, assuming that they had realized it, I take your point that maybe nobody even thought about this, so it kind of leaves this little lacuna, but let's just suppose they actually forecast this very problem. Why would they have then achieved a result under which there's no availability of CRRs under the agreement, but there's still availability of CRRs under the tariff? Well, if there's no default rule that says that the agreement has to be the sum collection of all rights, then you could think we'll have it out under the tariff if the unlikely event happens and there are CRRs. And maybe Edison thought, yeah, I mean they apparently thought that route was available. We don't think they can score a touchdown there. And so they would have just potentially left that and the question is who wins with silence? And so they may have just figured we'll address that down the road. Now, Your Honor, since there was no trial here, we didn't have exploration of the facts. I have a record that's limited, so I look back at the law and go, in the event of silence, what happens here? We have no evidence that the result you're exploring, you can never get CRRs. And so first reasoning from silence, we have a clear statement in the regulation that says if you pay, you get these rights unless you're otherwise paid. And giving up the right of refunds is actually sort of a precondition to getting these revenue rights to begin with because you can't have both. So surrendering the refunds is in some ways putting you in the batter's box of getting the congestion revenue rights. Now, you know, let me ask you because I've looked at this agreement in a different way. I've looked at it from next era facing the possibility that it wasn't going to be ready in time and it was after immediate deliverability. And the CRRs, the refunds, the network upgrades were all down the road. They wanted this interim project in place so they could deliver the electricity. So they got a huge benefit. I mean, the fact that they may not get refunds or CRRs if any of the interim project is not made permanent, I don't see why we should be weeping for them when they got what they bargained for, which was that immediate deliverability. Well, Your Honor, I would respectfully submit that skips the question, which is whether they had to bargain for all possible roads to roam to go through the interconnection agreement. And I would also submit to you that FERC has a landmark statement by rule about system benefits. And let's bear down on what the system benefits actually are. If NextEra had not built or not funded the interim facilities, energy prices would be higher than they are now. So there are system benefits that are created by this investment. And by rule, that means NextEra is eligible for these revenue rights. If they don't get the revenue rights, then actually there's a windfall, but it's a windfall not in NextEra's interest to pay not one cent for the facilities. And you are now reaping the benefits from lower prices that should go by rule to NextEra. Now, we could have had a debate at FERC about whether I'm right about what this regulation says and whether the interviews are right, that we don't meet the preconditions. I would submit to you that FERC, in trying to say this is clear, hasn't pointed to anything in the agreement that actually is clear. Their explanations don't really make any sense. Everything they point to is in the context of Capital In, Network, Capital U upgrades. And so I don't think they can reach the result that they look for here, which actually cuts off questions about sort of why we might be here. They've got a burden to carry. They've chosen the highest burden they can. This is clear. We submit to you they haven't shown that. They still haven't explained in any fashion you can follow how it is that the contract, not even looking at the tariff, clearly disposes of these issues. And so we would submit that the second or third option must obtain here, that either you vacate and remand or you remand because they've not offered a path to find clarity that I think you can follow or that politicians can even discern. Can I ask this though? Is the upshot of your position is that there's no ability to get CRRs as an interconnection customer, but there is an ability to get CRRs as a project sponsor? That's the upshot of your position, right? That's right. Yeah. And although we're talking about getting CRRs with respect to the very same work that's being done by NextEra, you can't get it as an interconnection customer, but you can get it as a project sponsor. That's right. And there's no conflict with that. That's a question of how the different regimes work. And what would the contrary rule mean? Would it mean that if you're an interconnection agreement, you, interconnection customer, you alone among the universe of possible funders are disabled from getting CRRs under the tariff? We argued that was unjust and unreasonable and unduly discriminatory. We were ignored. That self is grounds for category eats the entire rule because everything's a network upgrade. And so maybe you can only go through the interconnection agreement. Nobody else can use the tariff. We don't have answers to any of these questions because FERC hasn't, are they relying on silence? Are they saying network upgrades is some vast universe that covers everything? I would submit to you, I shouldn't have to sit here and speculate. And neither should you wonder what the answer to those questions are. I don't think we'll hear anything. Your basic position is, look, there's nothing in the agreement that precludes obtaining CRRs under the tariff, right? That's what the plain language says. And you don't want us to sit around worrying about, well, why would the parties have done that? What sense does it make? Your point is, look, this is what it says, right? Yes, but your questions are your questions. So I recognize that's the way I viewed your case. You viewed your case that way, that contrary to what FERC said, the interconnection, the agreement does not preclude obtaining CRRs under 3611 of the tariff. That's correct. And as far as you're concerned, that ends the case for this court, right? Yes, that is our main argument. Even if it doesn't make any sense at all that your client would obtain the same CRRs under the tariff that it couldn't obtain under the agreement, right? Yes, though I don't agree with the premise of your question, because I think it can make sense, but I think it's not. Say once again why it makes sense. I know you don't think we need to think about that, right? It makes sense, Your Honor, because these are two separate regimes awarding two different kinds. If you're electing CRRs in lieu of refunds, you're doing that, as the agreement says, because these are installations that are permanent, that can roll on through time. And in our situation, CRRs are a different instrument. Refunds are like traditional regulatory cost of service recovery. CRRs are something that can be awarded for a slice of time, because they model benefits to the system over defined periods of time as you move through time. So it's a different product. The tariff allows this. Could you not have preserved your ability to get CRRs under the agreement? We could have, but so too could the counterparties have said, you can't get them under the agreement for all purposes. I understand that. It's just that if CRRs... I completely understand Judge Tatel's point, which is sometimes courts are in a position of doing things that might not at first blush appear to be commonsensical. It's just the best possible state of the world is when courts do things because there is a common sense behind it. And I'm just trying to get at whether we're in that land or are we in the land where we're achieving a result where the common sense isn't manifestly apparent. And what I don't understand about the argument you there's nothing that precluded CRRs from being available under the agreement. And the question is, if that's gone, why does it make sense to have them still be available under the tariff? And maybe this isn't satisfying any of you as a practical reason why this makes sense. But if you have a freestanding tariff and in fact regulatory right to a road that leads to Rome, silence in the contract doesn't give that up. And at least, I would say, Your Honors, you don't have a basis presented to you by the orders, which are cryptic at best, to say this is clear. It's not clear. I think it's clear our way. But at a minimum, it's not clear FERC's way. Let me try to ask the question a different way. Maybe it's the same way, but okay. So as I understand your position is when the parties, when anybody sits down to draft an agreement like this, everybody knows about the tariff, right? The tariff is like the Constitution, 3611, it's basic law, correct? Yes. Okay. So given, let's just assume that everybody sitting around the table knows that the tariff provided one option for your client to get CRRs, right? So why would they have drafted an agreement that bars them from receiving CRRs in this particular way, that is, instead of cash for network upgrades? Without observing this other route? No, no, no, no, no. They know that the next era can get CRRs under the tariff. So why would they have put in the agreement that they can't get CRRs in lieu of refunds for network upgrades? Well, what the agreement says is these aren't network upgrades, which takes you out of the agreement entirely, and you can't get refunds. It's a tag along that's added logically by FERC to say you can't get CRRs. And the reason refunds were given up goes back to what I started with. Refunds are this long-tenured sort of utility style, give back a return of and on your investment. And CRRs can be, you know, a brief snapshot in time, so they're different things. But I like your reference to the Constitution because we went over that when we were preparing for this argument. I mean, what else does next era have to list in the agreement to preserve? Do they have to list the Constitution? Do they have to list everything in the tariff? Do they have to list the Federal Power Act? What rights are they waiving, despite FERC's rule against express waiver, by not maintaining them in the agreement? And how can FERC defend that in the absence of any language in the agreement expressly effectuating that result when they refused even to open the book on what the regulation or the tariff route says? They've looked at half the playing field and concluded somehow because there's some sort of default rule they're not even able to articulate. Is it some broad definition of network upgrades? Is it silence means we win? They've never said silence means you win. They've never said the interconnection agreement has to be the sole, you know, gathering up of everything. There's no rule like that or no order like that. That's not in the regulation. It's not in the agreement. In fact, FERC, on brief, talked about 3.3 of the agreement but totally got it wrong. That agreement, that provision says if you're dealing with something between CAISO and next era and there's a conflict between the tariff and the interconnection agreement, the tariff controls. So by those lights, you know, in the event of some lack of complete symmetry, it's the tariff right that has to win. Let me ask you this. Why did you enter into the agreement? My client entered into the agreement because it was concerned that the permanent West of Deaver's upgrades, which are a billion plus dollars. You wanted the deliverability. Isn't that right? That's what I've been reading. Yes, that's correct. There was a best efforts obligation, this isn't in the record, to try and get deliverability for the first contract. That's what you had to have, right? And try and get it. Otherwise, why enter into the agreement? And I ask again that the giving up, if your position is correct, the giving up of CRRs under the agreement meant absolutely nothing if you could get them under the tariff. And what you got from the agreement is exactly what you wanted, which was the immediate deliverability. Well, we also, yes, Your Honor, but we also paid for the interim upgrades and we delivered solar power, you know, on time to California. And you had the chance at the end that the interim might become permanent and you would get the CRRs or the refunds. And we gave up refunds, which was a requirement, and giving up CRRs through the tariff was never a bargain for provision of that agreement or it would be express. I mean, I did try this before. You know, you could turn the same shoe on the other foot and say, why didn't the counterparties insist that we give this up? And if I'm right, and in the absence of anything clear, the tariff prevails, at a minimum, because it clearly set forth why that would be the case. I see my time has long passed, but so I'd love to keep trying to answer your questions as best I can, but... We'll give you a couple of minutes, if you'd like. Okay. Ms. Reilander? Good morning. May it please the Court, Elizabeth Reilander for the Federal Energy Regulatory Commission. I'd like to pick up where the Court left off with the fact that NextEra, as the Court seems to understand, NextEra argues that there's more than one road to roam here, that it has more than one path to obtain congestion revenue rights. But as is apparent from both the letter order and the interconnection agreement, and as the Commission found in both orders, NextEra is participating in these agreements as an interconnection customer. And as you mentioned, Judge Henderson, a couple of times, they did this for purposes of obtaining immediate deliverability... Can you, before you talk about purpose, could you just help me with the language? I mean, why isn't NextEra completely correct, at least about the language of the agreement? Basically what it says is that the interconnection customer may obtain CROs in lieu, it doesn't say only in lieu, it says in lieu of refunds. So the only thing it says is that they can't get both. It doesn't say anything about 3611. No, Your Honor, it does not reference 3611. Right. But aren't I right about the way, if you just look at the agreement, the agreement does not clearly preclude, as FERC says in its decision, obtaining CRRs at all. It just says they can't get them, this is the only way they can get them under the agreement, in lieu of payments. Yes, Your Honor. Right, okay. So now where do you go from there? Where do I go from there? If that's true, then don't we, I mean, you know, our obligation is to look at the language. FERC says the language is clear, you disagree with me that it's not. Doesn't that end this case? No, Your Honor. The critical distinction here, and one that NextEra is trying to obscure, is that interconnection and transmission are separate processes. Right. They are traveling the road of an interconnection customer, and they're building, they're building not even a piece of the transmission grid, but rather a patch to it, in order to obtain that immediate deliverability. Yeah. The other way, as the Court knows from South Carolina and related cases, is that when one builds transmission, that's, that is a longer process that involves assessing the needs of the entire grid from the top down. That's 3611, right? That's obtaining it under 3611. That's correct, Your Honor. But that's not what the FERC order says. Right. The FERC order simply says they're not, it doesn't deal with 3611. It says 3611 is not relevant, because the agreement is clear. And from our perspective, that is of a reviewing court, that's wrong. Now FERC could have gone on and said, okay, 36 under the agreement, they, they, the lieu of is in lieu of repayments, but there is this other option, 3611, but they're not eligible for it for the following reasons. But it didn't say that. It just said 3611 is irrelevant. Yes, Your Honor, that's true. Okay. And once again, it's because the premise of this is not transmission, which is 3611. The premise is interconnection. Okay, but it doesn't say any of that in the order. You're telling us that now. And we have to review the order that's before us. What NextEra has also said, Your Honor, is that NextEra has made clear that it knows how to protect its rights to congestion revenue rights. It specified in the interconnection agreement that it would get them under certain circumstances. So it knows that, it knows that there is, there is one path to congestion revenue rights available. NextEra also knows how to protect, NextEra also failed to timely assert its rights under 3611 if it thought it had those rights at the time the interconnection agreement was signed. Yeah, but that's, none of this is in the commission's order. The commission did address, did address the question of timeliness at the complaint order. But the other thing about the, addressing the, first of all, on timeliness, a couple of times I can tell it's not in your brief at all. There's no argument in your brief before us that says that they're ineligible to get CRRs under the tariff. Your argument in your brief is completely that they gave away their ability to give, to get CRRs as an interconnection customer, and therefore it follows as naturally as night follows the day that they can't possibly get CRRs as a project sponsor. Yes. And I just, but it doesn't say anything about whether they would be eligible to get CRRs as a, under the tariff. It doesn't deal with that argument at all in the brief, as far as I can tell. Correct me if I'm wrong. No, that is true, but the orders do mention it at the complaint. So then with respect to what the orders say about it, can I just ask this question? So the orders do mention that, at least the, I think the, is it the, I think the rehearing order mentions it. I didn't see the original order mentioning it. No, it's right here. It says, it says it didn't have to consider 3611, quote, because it agreed to a particular treatment in the interim agreement, in the agreement. Yes, and again, Your Honor, this goes back to which path to Rome next era is traveling. It is traveling the path of an interconnection customer and not of a transmission developer, which implicates 3611. Their argument that the interconnection agreement doesn't account for rights that it would have were it a transmission developer really greatly expands the scope of what it thinks the interconnection agreement is for. The interconnection agreement is there to ensure that they're able to interconnect the generation facilities to the grid, which they were able to do, and for which they got their, they got the bargain, they got the benefit of that bargain. It's not there just to lay out and specify and include and exclude every other conceivable right that they might have. So this gets back to whether it's possible to be both an interconnection customer and a project sponsor. Yes. Can I just, just let me close the loop on the question of, let's suppose it's possible to be a project sponsor. They didn't do things on a timely enough basis. That was part of your argument. Yes. And that, that, as far as I can tell, that nod is not in your brief. It's only in the rehearing order. It's not in the original order. In the rehearing order, it does say that paragraph 18 on JA 418 to 419 that they next era would have had the ability to apply in a timely manner for merger transmission facility status for the interim project and project sponsor status. Next era did not take these steps. Is that what you're referring to? Yes, Your Honor. So then, but then later on in the final paragraph of the order, the commission says, therefore, we need not address the merits of next era's request for waiver of the timing requirements under Kaiser's tariff as the merits of the waiver request remain irrelevant to our decision. Right. And that, that makes it seem like, well, time, the timeliness was only offered to show the first argument, which is that these are mutually exclusive categories, that they can't be both. And they must have understood that because had they, had they not understood that, they would have applied in a timely fashion. Because then when you get to the end of the order, the FERC says, it's irrelevant. Timeliness is just irrelevant here. And so that means that the argument that under the tariff, they could have gotten it, but they didn't do it in a timely fashion, just drops out of the equation as far as FERC's concerned. And so we're back to the argument that Judge Tatum was referring to, which is, it may be true that project sponsors and interconnection customers are mutually exclusive in this context, but the FERC order doesn't really seem to say that. The FERC order does not really seem to say that, but NextEra's behavior does. And that's what FERC was pointing out in the order. NextEra first brought up Section 36.11 at the time the ISO, the California ISO said it may model this interim upgrade for purposes of congestion revenue rights. At that point, all of a sudden, NextEra said, well, NextEra said, we would like to obtain the congestion revenue rights under that for Section 36.11. We didn't raise rights that we might hypothetically have had as a transmission developer under our interconnection agreement. And again, that is mixing and matching two different ways to build the grid, and in a fashion that the Commission simply didn't contemplate in crafting the pro forma language of the interconnection agreement. They've also, as the interviewer's brief pointed out, never made the case that they are, in fact, a project sponsor or that the interim project is a merchant transmission facility. But they're trying to make that case now. They are. Right. And so, and their argument is, look, I don't even have to explain whether it makes any sense for me to have an eligibility for CRRs under the tariff. I don't have to explain that at this stage because I still get to try. And you just haven't told me in an order, which is what this Court reviews, why I can't make that argument. Yes. I heard the Court ask three separate times whether it made sense for NextEra to be able to obtain congestion revenue rights under both the interconnection agreement and under the tariff. And counsel, I think, was unable to answer that question because it does not make sense. And I think the Commission would be free to explain that on remand if we had to send it back because the order doesn't already say that. The order does not say that. But the Commission examined the interconnection agreement language at issue, found that it was unambiguous. And then in the second order, it checked its work. But you agree with us that that's not accurate, right? Didn't you? I mean, you agree that that's wrong, that all the agreement, nothing in the agreement precludes obtaining CRRs under the tariff. It just says they may obtain them in lieu of repayment. I hope I haven't been ambiguous myself, Your Honor. What the interconnection agreement says is that they have, in paragraph 9 of Appendix A to the interconnection agreement, which is the only part of that agreement specific to this project, is that they have waived their right to obtain congestion revenue rights because they do not have a right to obtain a refund for building this interim project. That is very clear. The orders find that that language is clear and unambiguous. Okay. And if I said something different, that was not what I intended to do. Okay. No, I'm glad you corrected that. That's fine. But we'll keep going there. But the Commission, to get back to your question, Judge Renovason, the Commission not only found that the relevant terms of the letter agreement and the interconnection agreement are clear and unambiguous, but in the rehearing order, it checked its work. It looked at the extrinsic evidence that NextEra suggested, which was, in fact, the silence that is troubling NextEra. Not an actual piece of evidence at all, but the lack of language. And the Commission found that that did not change the result. This is still, the interconnection agreement still lays out what NextEra's rights are, and here, what they are not, which is to obtain any sort of reimbursement or refund for constructing this interim project. Where does the rehearing order say that the interconnection agreement not only lays out their eligibility to obtain CRRs, but it shows that that's the only way they can obtain CRRs, that there is no eligibility remaining under the tariff, that they necessarily had to agree to that in the interconnection agreement? The best language is in paragraph 19 at JA419, Your Honor, and also paragraph 20, JA419-420. The Commission interpreted the tariff there even though it did not need to look beyond the letter agreement and it didn't reach the different result. In making this interpretation, as shown in this paragraph, the Commission continues to view NextEra only as an interconnection customer and never finds that it could have been a project sponsor. Let me take, let's go back. Judge Srinivasan was asking about the rehearing order. So, in support of its position, its first position, that, quote, section 3611, quote, does not apply here. It says this. It says, the letter agreement clearly states that NextEra would receive refunds, would receive refunds, would not receive refunds unless the interim project became a permanent transmission, right? Yes, Your Honor. And that's totally accurate. That is accurate. It's the next sentence. The parties thus decided to forego section 3611 and, in fact, agreed to that. See, that's the logical fallacy right there. The therefore is your problem. The fact that they agreed that they would not get, would not receive any refunds unless the interim project became a permanent transmission facility, the fact that they agreed with that does not logically lead to the conclusion that they therefore agreed that they couldn't get them under 3611. That's the logical fallacy of the first decision, I think. Isn't it? No, Your Honor. I disagree. This shows that NextEra knew how to protect its rights. It knew that should any part of that interim project remain connected to the system permanently, that it would want the attendant congestion revenue rights. This, again, is a temporary facility. It's a patch. It's intended to facilitate delivery. Terry, just before, tell me once again how you would explain why this is not a logical fallacy here. Just on the terms, I don't think you can for convince case here by saying, well, NextEra knew how to negotiate or knew it was a sophisticated player, as you're saying. We're stuck with the language of the agreement and the language of the FERC order and rehearing order. And I see a logical fallacy in it that I haven't heard an explanation from you as to why that isn't a logical fallacy based on what FERC tells us. You've told us a lot of things that aren't in the FERC order, but I haven't seen anything. You haven't pointed to anything in the FERC order itself that explains this problem. Paragraph two of the rehearing order, Your Honor. NextEra is an interconnection customer under a large generator interconnection agreement among Southern California Edison Company, NextEra, and CIISO that governs the interconnection of the 250-megawatt Genesis solar plant near Desert Center, California. That statement excludes the possibility that NextEra is something else. The commission wasn't looking at NextEra as anything other than an interconnection customer trying to attach itself to the generator. Right, but their point, NextEra's point, is that, yeah, the commission only looked at us as an interconnection customer, but you know what? We want to be a project sponsor, and we want to get CRRs under the project sponsor lane, which is open to us under the tariff, and nothing in the commission's order treats with whether we can be considered a project sponsor. It only says that we can't get CRRs as an interconnection customer, which is definitely true. Nobody disputes that. But why is that necessarily to the exclusion of getting CRRs as a project sponsor? The intervener brief explains, I think, in more detail than I can, that in order to become a project sponsor, you have to announce yourself to the independent system operator ahead of construction. Those all seem to me perfectly well-taken arguments that NextEra is going to have to contend with on whether they can get status as a project sponsor. But that's not the argument that FERC made in its brief, and it's not the argument that FERC made in its orders. No, FERC took a different view of this, but that doesn't mean that FERC disagrees with anything that interveners have said or could not have made those findings. But it's hard for us to affirm FERC's orders on a rationale that only the intervener is putting forth and that FERC says, and I take it to be true, that you agree with that rationale, but it's not in the order. I do agree with it. No, I appreciate the tension that you're hearing, but FERC's view of this was solely of an interconnection customer attempting to find a way to connect itself to the grid and striking an unusual bargain for a temporary facility in order to effectuate that. Can I ask one follow-up question on the original order? Which is, as I understood the original order, the point FERC was making was that the nature of this beast is that there just aren't any CRRs under the tariff agreement, that if you understand the way that the grid is conceived of, that the Kaizo is barred from even issuing any CRRs under the tariff, that there's just no such thing. But that argument, and then that would be an answer. I mean, it would be a dispositive answer, I think. But that argument is not one that was put forward to us in the briefing. The Commission did find on pages 22 and 23 of the complaint, which are JA-382, and again, paragraph 21 of the rehearing order, JA-420, that because this facility was so unusual and because it was temporary, that the California system operator should not treat it as part of the grid. The California system operator should not allocate, model or allocate congestion revenue rights because, and part of this has to do with, I'm sorry, but should not model this and should not distribute the congestion revenue rights because this agreement in the interconnection agreement, again, Appendix A, Paragraph 9, that this is not a network upgrade, means that this facility is not properly considered part of the grid. Right. So if that's true, then there aren't any CRRs available under the tariff at all, I think. And if there aren't any CRRs available under the tariff at all, that's a complete answer to Nextair's claim that they're eligible to get CRRs under the tariff because the answer is, well, there aren't any. It is, Your Honor. If that's true and if that's in the original order, then why isn't it an argument that Burke made to us in the brief? It sounds as though we should have, Your Honor. That is in the orders. That is a correct statement. To the extent it was left out of the brief, I apologize. All right. Thank you. Thank you. Mr. Weaver. Good morning, Your Honors. Let me try to address the questions that have been before the Court. First, let me clarify. The interviewers agree with Burke's order. By expressly agreeing, the key term here is network upgrades. By expressly agreeing that these interim facilities would not be classified as network upgrades, Nextair was agreeing to Edison's sole requirement in doing this deal, and that was that no additional costs would flow to Edison rate payers for these interim facilities. Now, that could come in two forms. It could come in the form of cash reimbursement, or it could come in the form of lost congestion revenues that would result in creating new CRRs and allocating them to Nextair. That's why on that basis alone, right, you know, the first paragraph in each of the FERC orders, FERC says these are not network upgrades, and on that basis alone, it is sufficient to conclude that we should deny Nextair's complaint. This distinction between facilities that are network upgrades and are not network upgrades is universal to all generator interconnections. Every single new generator that interconnects to the KISO grid or any grid has some facilities that it triggers and has to finance and construct that are network upgrades and some that are not. And no generator has ever received cash reimbursement or CRRs for those facilities that are not classified as network upgrades. It's a fiction that these agreements do not speak to CRRs. So is that the answer to the question? Well, the reason the agreement doesn't deal with the tariff is everybody at the table agreed that the tariff was just irrelevant, that the tariff was just unavailable in this circumstance. Is that your answer to that question? I mean, the tariff's not irrelevant, but, yeah, certainly the CRR sections would be irrelevant. Right. I mean, Mr. Esses is right that they don't have to reserve every single right available to them under the tariff, but neither does the KISO at Edison have to list every single section that's in opposite. We use big catch-all words that are full of precedent, like not network upgrades. That's what that captures. So does that mean that you just, as an inherent matter, one cannot be both an interconnection customer and a project sponsor? To be sure, as our brief explains in detail, Nextera has no roads to roam. It couldn't also be a project sponsor, no. Under the agreement, because they're not network upgrades, and under all the reasons we put forth in our brief about the tariff. And FERC did get to this end of the re-hearing order. I think FERC went beyond, let's put aside the network upgrade question, let's look at some of their arguments under the tariff, and we don't see anything here as well. But there's two different ways to look at the potential applicability of the tariff. One is, yeah, you might be a project sponsor in theory, but you just didn't take the steps you needed to prove your project sponsor status. You didn't apply in a timely fashion. You didn't go through the Article 24 process. Maybe I'm getting the terminology wrong. No, that's all right. Okay, you didn't go through that correct process. That all, and I understood those arguments that you were putting forward. That all assumes that it's at least possible to be both a project sponsor under the tariff and an interconnection customer under the interconnection agreement. But as I understand the argument that you started with and that FERC is making, it's that it's just impossible. It doesn't even make any sense to think about an entity being both an interconnection customer and a project sponsor. There's not two routes. Yes, that's right. But I also think something, I mean, we discussed Nextera's lack of actions after this for a different reason, and that is Nextera's inaction after these facilities were constructed really belies all its arguments. I mean, if it actually believed that it was somehow entitled to CRRs under the tariff, why didn't it do anything? Nextera, in this matter, is the CAISO's most sophisticated market participant. It is the only holder of the only merchant transmission CRRs in the CAISO. It almost regularly submits an application through our transmission planning process, through the Section 24 transmission process, and it has numerous requests every year under the interconnection request. So your argument is the same as FERC's on the lack of timeliness and everything. It's just, yeah, they were untimely. But it just shows that they and everybody else understood that they couldn't get access to CRRs as a project sponsor. Everybody knew that that was a background assumption against which the interconnection agreement was enacted. Yes, because that is all part of what it means that these facilities were not classified as network upgrades. I see my time is up. Do you have any more technical questions? Yes. Thank you. Does Mr. Estes have any time? All right, why don't you take two minutes? Thank you, Your Honor. Your Honor, I'll hit a few points briefly. The intervener's brief at pages 17 through 18 clearly says there are two roads to Rome. I commend it to you. Desert Center did not avail itself of either of these tariff processes, meaning 3611 or the agreement. There's never been any place prior to the mangled discussion in these orders where forever could it be seen to say you cannot be a project sponsor if you're not a connection customer. That is newly minted. It's never, ever been said. And we shouldn't be paying a price for some unarticulated rule. CRRs are not a cost sent to load. They are simply taking a benefit that exists because of the funding that NextEra, which is one of the major solar developers, put 500 megawatts of solar energy in, and those are the projects at issue here. They funded these projects, the upgrades. The benefits we're seeking are benefits that those upgrades created that are a windfall to load. Finally, assume we agree that, I mean, aren't you running the risk here of kind of a pyrrhic victory? Let's assume the court agreed with you that FERC's order as written can't stand. It has to go back. They seem to have so many other ways of arguments that probably haven't been made here that would end up with NextEra not getting CRRs, either because there are none or because it doesn't qualify under 3611. So what do you accomplish here other than obtaining a nice judicial opinion on administrative law? There's a lot of discussion about what is fair. I would submit to you that what is fair is that we get a reasoned response to our arguments, and we didn't get that. And I would submit to you also I haven't— I understand that. That I get. I mean, this is what we deal with all the time. But do you see why I'm asking you the question? It just seems to me that in the end you're not going to get your CRRs anyway. We think we will. We have answers to everything you've heard today, and we like to find out. The timeliness question has an answer. And hear me with this. In 2013, I talked about this. Edison filed this amended agreement with FERC. It told everybody that Desert Center is the sole beneficiary of the benefits derived from the installation of this project. That's why—and we only found out a month before we started, days or weeks before we sent a letter to Kaiser saying, We want these. So we reacted with dispatch after learning of the surprise— we learned of it as a surprise— that there would be benefits that we paid for. We would submit the equities actually are in our favor, and those facts I just explained explain why some of this window stuff and the timeliness, there's an argument about whether we fulfilled it or not. We don't even know. The record doesn't show for sure. When was the actual service date of the final bit of the facilities? We actually don't know that. And if you stand back from all of this, if there are hurdles, 3611, places in our way, we argued, and this is a facially legitimate argument, that that's unjust and unreasonable under FERC's regulations and under the Federal Power Act. Why are interconnection customers singled out to be denied this tariff route? And we got no answer. So we would remove those obstacles, but we think we cleared them, and we just ask for the chance to find out, Your Honor. We ask that you vacate and remand or alternatively remand, and thank you for your time. I know this is kind of an unusual case. Thank you.
judges: Henderson, Tatel, Srinivasan